Bartley, C. J.
It is well settled in this state that a mortgagor in possession is seized of the legal title to the mortgaged premises until condition broken, and even then as against all persons, except the mortgagee. Upon this principle Ephraim Carter was seized of the legal estate in the promises in the petition described, and the wife entitled to her contingent estate therein.
Was she divested of this estate by the subsequent conveyances in which she joined with her husband? The deeds of September, 1829, conveying one-fourth of the premises to Oassilly, and one-fourth to Grandin & Gwynne, were properly executed, and clearly passed her interest. But the deed of the 6th of December, 1828, for the undivided half of the property contains nothing which affects 78] the wife’s rights. ^However, the trite maxim that courts should favor dower may seem obsolete, it is not to be forgotten that this ¿estate is given by the common law as a kind of compensation for :the disabilities attaching to the wife in a state of coverture; and can ¡not be cut off without a strict compliance with the formalities provided by law as a protection against imposition.
It was held by the Supremo Court in this state, in the case of McFarland v. Febiger’s Heirs et al., 7 Ohio, 194, that where a wife is named only in the clause describing the parties, and in the ¡attesting clause of a deed, the covenants all being by the husband .alone, and no terms employed touching the wife’s contingent estate of dower, she is not concluded, though she join in a formal execution .of the deed. Upon this ground the deed of the 6th of December, 1828, to Grandin & Gwynne for the undivided half of the property, was ineffectual as a conveyance or release of petitioner’s right of dower.
It is claimed, in the defense, that the right of Wister under the ¡mortgage given him, in which Matilda Carter joined with her husUand, passed to Grandin & Gw^ynne on the payment by them to Carter of part of the purchase money, which by their arrangement with Carter was applied to extinguish the mortgage. Grandin & Gwynne did not purchase the mortgage of Wister, or even take an .assignment of it; but Carter, by his contract with them, provided for the application of a part of the purchase money coming to him in discharge of a balance of his liability to Wister. And when the ¿application was made, Wister released and discharged the mortgage. *79 The money, therefore, which was applied in satisfaction of the debt was the property of Carter, and not that of Grandin & Gwynne. And Carter suffered no default. He discharged the debt before condition broken, and before Wister had acquired any right to enforce the mortgage as the security for his debt. There was plainly no intention to give Grandin & Gwynne any right or interest under the mortgage, as it was released on tho payment of the debt, instead of being transferred. Grandin & Gwynne relied for *their [79 title to the one undivided half upon the conveyance above mentioned of the 6th of December, 1828, which was subscribed and acknowledged by the wife, although she did not join in the granting part of the deed. This conveyance, therefore, upon which it was the evident intention of the parties to rely for their title, failing to contain a valid release of dower, the grantees can not help themselves by a resort to a satisfied mortgage, and especially one which was discharged by the mortgagor himself before condition broken, and, therefore, before even tho mortgagee himself had acquired any right which he could enforce against the premises. It is true that the debt was paid and the mortgage discharged after Carter had sold aiid conveyed to Grandin & Gwynne. But the amount paid by Grandin & Gwynne to Wister on the mortgage was in reality a payment by them to Carter. It was a part payment of the purchase money coming to Carter. It was a compliance with a stipulation in their contract with Carter, by which his liability to Wister was extinguished. The money, therefore, thus paid by Grandin & Gwynne was paid for Carter’s use, and in satisfaction of his own debt in the manner required by him. I know of no ground upon which Grandin & Gwynne can, under these circumstances, claim to be subrogated to the rights of Wister in the mortgage, and to acquire an interest in the premises under a mortgage the condition of which even was never broken.
The ground here taken, is fortified by the decision of the Supreme Court of this state in Taylor v. Fowler, 18 Ohio, 567; also by the decisions of the Supreme Court of Massachusetts in Bolton v. Ballard, 13 Mass. 227, and in Barber v. Parker, 17 Mass. 564, and also by the Supreme Court of New York, in Hitchcock and wife v. Harrington, 6 Johns. 290; and it is not inconsistent with the decisions in St. Clair v. Morris, 9 Ohio, 15, and Rand and wife v. Kendall, 15 Ohio, 671.
The case Popkin v. Humstead, 8 Mass. 491, which has been relied' *80 80] on as authority to sustain the defense, is not ^strictly in point. In that case the mortgagor was never seized of the mortgaged premises or any part thereof, after the execution of the mortgage deed; and the mortgagee had actually entered and was seized of the legal estate in the premises. The administrator of the mortgagor under an order of sale, as it appears, sold the bare equity of redemption after the mortgage debt had fallen due; and the purchaser having taken the j>remises subject to the mortgage, afterward discharged the mortgage debt with his own money, and for his own benefit, and not under the requirement of any contract liability with the mortgagor.
But in the case before us, the defendants acquired no legal estate under the mortgage, and were in no way connected with it so as to derive any protection from it.

Decree for the assignment of dower in the one undivided half of the premises.